**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE SUBPOENA *DUCES TECUM* TO JOSEPH L. BRAND** | **MISC. CASE NO. 08-517 (RJL)** |
| **FELIPE VICINI LLUBERES and JUAN VICINI LLUBERES,**<br><br>            **Plaintiffs,**<br><br>    **vs.**<br><br>**UNCOMMON PRODUCTIONS, LLC and WILLIAM M. HANEY III,**<br><br>            **Defendants.** | **CIVIL ACTION NO. 07-11623 (D. Mass.)** |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA *DUCES TECUM* AND
MEMORANDUM IN OPPOSITION TO CROSS-MOTION TO QUASH**

Movants Uncommon Productions, LLC, and William M. Haney III, by and through

undersigned counsel and pursuant to Local Civil Rule 7 of this Court, respectfully submit the

following memorandum of points and authorities in further support of their motion to compel

compliance with a subpoena *duces tecum* served upon Joseph L. Brand ("Brand") and in

opposition to Brand's cross-motion to quash the subpoena.[1]

---

[1] Brand's purported cross-motion – which repeats verbatim the arguments raised in his opposition to the motion to compel – should be disregarded as a transparent attempt to extend briefing on the motion to compel without the Court's leave. In any event, the motion to quash should be denied as untimely pursuant to Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure because Brand did not file it until twenty-five days after the subpoena was served and seventeen days after the date set for his deposition. *See United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 278 & n.6 (D.D.C. 2002) ("timely" in Rule 45(c)(3)(A) means "within the time set in the subpoena for compliance" unless the time set for compliance is unreasonable).

Faced with a motion to compel that exposes his wholesale refusal to turn over nonprivileged documents responsive to a narrowly tailored subpoena and his willful failure to either appear for his deposition or obtain relief from his obligation to do so ("the Motion"), Brand has manufactured a defense for his noncompliance consisting of bluster rather than substance.  His overwrought response to the Motion is particularly remarkable given that:

- after the Motion was filed on August 11, Brand offered to appear for a deposition pursuant to a Consent Order, *see* Second Declaration of Elizabeth C. Koch ("2d Koch Decl.") ¶ 2;

- Movants expressly confirmed on August 18 (four days before Brand filed his opposition and cross-motion) that they would "not seek, move or attempt to disqualify Patton Boggs LLP or any attorney of Patton Boggs LLP from serving as trial counsel [for plaintiffs] in the underlying action pending in the United States District Court for the District of Massachusetts based on Respondent's compliance with the Subpoena" and that they were "not aware of any facts or circumstances that would require Patton Boggs LLP or its attorneys to withdraw from representing [plaintiffs] in the underlying action pursuant to any applicable Rules of Professional Conduct," *see id*. at ¶ 3, Ex. A;

- Movants further agreed that the subject matter of Brand's deposition would be limited to "the 'lobbying services' that Patton Boggs LLP may have provided to [plaintiffs] and/or any business entities in the sugar industry affiliated with [plaintiffs]" (with "lobbying services" narrowly defined as *nonprivileged* communications between Patton Boggs LLP and employees, officials, or agents of the executive and legislative branches of the U.S. government), *see id*.; and,

- at Brand's request, Movants agreed to conduct their deposition of Brand in Brand's offices, *see id*. at ¶ 4.

Notwithstanding these agreements, Brand responded to the Motion with an assemblage of forfeited arguments, thinly veiled distractions based on false accusations and distortions, and utter *non sequiturs*.  Movants will address each of the central points raised by Brand in turn.

**(1)     Movants have no ulterior motive in seeking discovery from Brand.**

Brand's memorandum ("Opp'n") contends that Movants' "real goal [in subpoenaing Brand] is to harass Plaintiffs at a very late stage in the proceedings by wrongfully interfering

with their trial preparations and attempting to manufacture grounds on which to seek the disqualification of Plaintiffs' counsel." Opp'n at 2. Movants, however, have consistently informed counsel for Brand and plaintiffs that they have no such intent, and, as noted above, Movants expressly agreed to sign a Consent Order that would preclude them from seeking disqualification of any Patton Boggs attorney in the underlying litigation based on Brand's appearance as a deposition witness. Brand's allegation that Movants "refused . . . to refrain from moving to disqualify Plaintiffs' counsel based upon Mr. Brand's deposition," Opp'n at 6, is therefore patently untrue.[2]

Brand's suggestion that the timing of Movants' subpoena threatens to impede plaintiffs' trial preparation is similarly disingenuous, at best. Any potential trial of this action is still many months away. There remain several pending discovery motions in the underlying litigation – for which the trial court has scheduled an October 6, 2008, hearing – and those motions are likely to result in at least some additional discovery. Moreover, the trial court has recently postponed indefinitely the deadline for filing dispositive motions.[3]

---

[2] In any event, the prospect that Brand's testimony regarding Patton Boggs' lobbying services for plaintiffs would somehow jeopardize Brand's ability to serve as plaintiffs' trial counsel – a function that he has not performed to date – is exceptionally remote given that such testimony would relate solely to an issue of law (the Vicinis' status as "public figures"), which must be decided by the trial court, *Pendleton v. City of Haverhill*, 156 F.3d 57, 68 (1st Cir. 1998), and involves a case that would be tried to a judge rather than a jury. *See Int'l Elecs. Corp. v. Flanzer*, 527 F.2d 1288, 1294 (2d Cir. 1975) (one justification for disqualification of trial counsel who is also material witness is "that the lawyer-witness will vouch for his own credibility in summing up to the jury"). Brand's limited role as a witness, moreover, would not disqualify his partners from continuing to serve as trial counsel. *See* Am. Bar Ass'n Model Rules of Prof. Conduct, Rule 3.7(b) ("A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by [a conflict caused by an ethical obligation to another client].").

[3] With respect to Brand's contention that Movants could have, but did not, serve the subpoena earlier in the discovery period, Opp'n at 6, the fact remains that – regardless of whether Uncommon Productions had somewhere in its files an email attachment from June 2007 containing lobbying materials provided by Brand to the State Department – Movants' counsel

Brand's arguments about motives and timing are, simply put, the reddest of red herrings.

**(2)    The alleged "defects" in the subpoena neither excuse Brand's failure to appear at his deposition nor preclude Movants from enforcing the subpoena.**

Brand contends that he was excused from appearing for his deposition because Movants did not include a check for the $40 witness attendance fee and mileage,[4] and he further contends that Movants may not enforce the subpoena because, according to Brand's counsel (who is also lead counsel for plaintiffs in the underlying litigation), Movants did not provide plaintiffs' counsel in the underlying case with notice of the subpoena prior to service. For reasons that are both factual and legal, these arguments are meritless.

While it is true that Movants failed to tender a required fee for Brand's attendance at the time they served the subpoena (an error Movants were unaware of when they filed their motion to compel), Brand nonetheless has forfeited any entitlement to object on that basis by not raising the defect for nearly three weeks after the subpoena was served, instead objecting on other grounds and waiting until after the discovery deadline had passed before mentioning the omission of the witness fee to Movants' counsel. Indeed, in a letter setting out his "formal response and objections to the subpoena" on August 1, 2008, Brand's counsel specified the "reasons [why] Mr. Brand will not be made available for deposition . . . absent a court order." *See* Dkt. No. 1-7 at 1, 3 (Ex. 6 to Declaration of Elizabeth C. Koch). Nowhere among the eight enumerated reasons (or anywhere else in the letter, for that matter) is there any reference to the missing attendance fee for Brand's deposition. It was not until August 17 – *six days* after discovery closed and Movants filed the Motion and *twelve days* after Brand failed to show up for

_____

was not, in fact, aware of Brand's specific activities on behalf of the Vicinis until the documents were first produced in discovery by the State Department in July 2008.

[4] Movants are at a loss to understand Brand's assertion of an entitlement to a "mileage fee," given that Movants agreed, at Brand's request, to conduct the deposition at his offices.

his scheduled deposition – that Brand first alerted Movants to the omission of the fee and expressed an intention to rely on that omission as grounds for opposing the Motion.

Under well-settled principles of law, the Court should find Brand's belated fee-service objection to be waived. *See EEOC v. Laidlaw Waste, Inc.*, 934 F. Supp. 286, 288-89 (N.D. Ill. 1996) (non-party witnesses waived argument that subpoenas were procedurally defective based on failure to tender witness fees with subpoenas); *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998) ("recipient of a subpoena [must] raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game'"). Confronting this very issue, the United States District Court for the Middle District of Florida held that, even though failure to tender a witness fee contemporaneously with a subpoena for deposition testimony "could render the subpoena unenforceable" in some circumstances, where, as here, the subpoenaed non-party made no mention of the fee omission to opposing counsel until after he failed to show up for the deposition, he will not later be heard to "argue that he did not comply with the subpoena because it was defective"; that objection is deemed "waived." *Am. Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.*, No. 5:04-cv-12, 2006 WL 1063299, at *2 (M.D. Fla. Mar. 28, 2006).[5]

Here, a finding of waiver is particularly appropriate because Brand's withholding of his fee-service objection (while specifically asserting other objections) has materially prejudiced Movants. Whether by design or by accident, Brand did not raise the witness fee issue until after the discovery deadline of August 11 had passed. On similar facts, the United States District

---

[5] Putting aside the issue of waiver, the cases cited by Brand simply do not support his argument that Movants could not retroactively "cure" the defect by serving a check for the witness fee – as they, in fact, did – promptly after being alerted to the omission. Indeed, one of the cases relied on by Brand expressly states that "late tender [of an attendance fee] may justify compelling [the subpoenaed non-party] to attend his deposition subsequent to the tender." *Klockner Namasco Holdings Corp. v. DailyAccess.Com, Inc.*, 211 F.R.D. 685, 687 (N.D. Ga. 2002) (cited in Opp'n at 8).

Court for the Southern District of New York held that a subpoenaed non-party had waived a claim of improper service of the subpoena where the non-party's counsel "served formal objections to the subpoena . . . without any statement to the effect that the subpoena was not served" and "[t]he claim of lack of service was first raised . . . [in] opposition to defendants' motion to compel." *MercExchange, L.L.C. v. eBay Inc.*, No. M8-85, 2007 WL 582729, at *1 (S.D.N.Y. Feb. 23, 2007). The court found that the service-defect argument had been "waived" under the circumstances and that "the subpoena . . . must be complied with" because the defendants would suffer "severe prejudice . . . if the process must commence all over again," in light of an impending discovery deadline. *Id.* at *1-2.

So too should the Court find here. Were Brand able to rely on this *post hoc* rationale to avoid compliance with the subpoena, it would create incentives for subpoena recipients to attempt to avoid discovery based on inadvertent errors by laying in the weeds while the discovery clock ticks down. The waiver doctrine is intended to prevent just such litigation-by-ambush tactics. *Cf. Abrahamsen v. Trans-State Exp., Inc.*, 92 F.3d 425, 428-29 (6th Cir. 1996) ("Our system of discovery was designed to increase the likelihood that justice will be served in each case, not to promote principles of gamesmanship and deception in which the person who hides the ball most effectively wins the case.").[6]

Equally unavailing is Brand's contention that the subpoena was procedurally defective because Movants failed to serve notice upon plaintiffs' counsel prior to serving Brand. As an initial matter, Brand's allegation is factually incorrect.[7] A copy of the subpoena was, in fact,

---

[6] Waiver of subpoena objections is a principle with which counsel for Brand and plaintiffs are quite familiar, having argued strenuously to this Court that a witness *they* subpoenaed in this litigation had waived any right to claim privilege by not timely objecting on that basis. *See In re Father Christopher Hartley*, No. 08-mc-010 (RJL), Dkt. Nos. 17 & 20.

[7] Of course, Brand's argument that *plaintiffs' trial counsel* was served with a copy of the subpoena only after *he* was served implicitly acknowledges that, contrary to representations

hand-delivered to the attention of plaintiffs' lead counsel, Benjamin G. Chew, at the law offices

of Patton Boggs at 6:31 p.m. on July 25, 2008, three days before Brand was served at 4:08 p.m.

on July 28.  Patton Boggs' own receiving log confirms the July 25 courier delivery.  *See* Chew

Decl., Ex. K [Dkt. No. 9-12].

      Taking this picayune issue to an unprecedented level of absurdity, Brand tries to cast

doubt upon the veracity of the sworn declaration of Movants' counsel by suggesting that,

because the courier's delivery log only shows that "*something* was delivered [to Patton Boggs]

on Friday evening, July 25," Opp'n at 10 (emphasis in original), but does not identify *what* that

something was, Movants' counsel "could not have personal knowledge of what Apple Courier

delivered that day." *Id*.  Movants' counsel, however, has testified that she dispatched a courier to

hand-deliver plaintiffs' copy of the Brand subpoena on the afternoon of July 25, *see* Declaration

of Elizabeth C. Koch ("Koch Decl.") [Dkt. No. 1-8] ¶ 3, and it is undisputed that a package was

delivered to Patton Boggs later that afternoon, *see* Opp'n at 10.  It takes no exceptional

inferential leap to conclude that the very same package that left Movants' counsel's office that

day was the one that arrived a short time later at plaintiffs' counsel's office.

      Although Mr. Chew avers that the July 25 courier package actually contained "a copy of

the discovery materials that Defendants obtained from the United States Department of State,"

Chew Decl. ¶ 7, he is mistaken.  In fact, the State Department materials he refers to were sent by

Movants' counsel *via first-class U.S. mail* on July 25, 2d Koch Decl. ¶ 5, Ex. B, and therefore

almost certainly could not have arrived in Mr. Chew's office that same day.  Mr. Chew's further

supposition that the 4:54 p.m. delivery on Monday, July 28, actually contained the copy of the

subpoena, Chew Decl. ¶ 10, is likewise incorrect.  That Monday afternoon courier delivery in

---

elsewhere in his opposition brief, Brand is not "a member of the trial team." Opp'n at 14.  If
Brand were in fact trial counsel for plaintiffs in the underlying litigation, as he contends, then no
separate notice of the subpoena would be required at all.

fact contained a letter to plaintiffs' counsel and two CD-ROM discs concerning an unrelated

discovery issue.  2d Koch Decl. ¶ 6, Ex. C (noting "Hand-Delivery" on July 28, 2008).  Indeed,

plaintiffs' counsel separately acknowledged receipt of that July 28 delivery.  *Id*. at ¶ 7, Ex. D.[8]

While there are myriad possible explanations for why the package containing the

subpoena might not have found its way into Mr. Chew's personal possession until July 28, the

evidence clearly supports a conclusion that the subpoena was delivered to Mr. Chew's office on

July 25, and thus there is no factual basis to find that Movants' failed to comply with the notice

provision of Rule 45(b)(1).

Moreover, even if the Court were to assume, *arguendo*, that Movants failed to give

plaintiffs the notice required by Rule 45(b)(1), it is the height of hypocrisy for Brand's counsel to

now take the position that "[t]he subpoena was therefore defective and invalid."  Opp'n at 10.

Before this very Court just three months ago, Brand's counsel (then in his capacity as plaintiffs'

counsel seeking to enforce his client's own subpoena to a third party) made *precisely the*

*opposite argument*.  When Father Hartley asserted that the subpoena directed toward him was

invalid because defendants (here, Movants) did not receive a copy of the subpoena prior to

service – and in fact did not receive a copy until *more than a month* had passed after service, *In*

*re Father Christopher Hartley*, No. 08-mc-010 (D.D.C.), Dkt. No. 20 at 7 n.7 – Brand's counsel

described this admitted violation of Rule 45(b)(1) as being totally "irrelevant" to the question of

the subpoena's enforceability.  *Id*. at 6.  In that proceeding, Brand's counsel further took the

position that a subpoena recipient (here, Brand) *lacks standing* to invoke the notice provision of

---

[8] Furthermore, Mr. Chew's declaration that he "retrieved the package . . . contain[ing] a copy of the subpoena" from the "Delivery Booth" at Patton Boggs sometime after 4:56 p.m. on July 28 conflicts with his own contemporaneous account of his receipt of the subpoena.  *See* 2d Koch Decl. ¶ 8, Ex. E (email from Benjamin G. Chew to Elizabeth C. Koch stating that Mr. Chew first learned of the Brand subpoena on the afternoon of July 28 when he "saw [a copy of it] in [his] *inbox*") (emphasis added).

Rule 45(b)(1) as a basis for challenging the subpoena's validity because "only parties" to the litigation can claim prejudice from such a failure of notice. *See id.* at 6-7 (stating that judges of this Court "ha[ve] refused to invalidate or quash a subpoena when the non-issuing party in the litigation has not been served prior to the third party to whom the subpoena was directed" and citing cases); *id.* at 7 (Rule 45(b)(1) does not provide "third parties . . . an excuse not to comply with the Subpoena"). In any event, even crediting Brand's fanciful theory of the facts underlying the delivery of notice to plaintiffs' counsel, Mr. Chew would have received notice just 46 minutes after Brand was served; plaintiffs were in no way prejudiced by this supposed brief delay between service of a subpoena on their agent and their counsel's receipt of formal notice of that subpoena.

> **(3)    Brand cannot avoid his obligation to comply with the subpoena based on the fact that plaintiffs' company, not plaintiffs individually, paid for his lobbying services.**

Brand attempts to further justify his noncompliance with the subpoena by arguing that, because plaintiffs in the underlying action are suing in their "individual capacities" rather than on behalf of the Dominican sugar empire they control, and because Brand's bills for his lobbying services are paid not by plaintiffs personally but by one of plaintiffs' sugar companies, CAEI, the information sought by the subpoena has no potential relevance to any claim or defense in the litigation. *See* Opp'n at 10-13. Whoever Brand's nominal client may be for purposes of federally mandated public disclosures regarding lobbying activities, even a cursory review of the documents that Brand prepared for State Department officials as part of his lobbying campaign demonstrate that the purpose of his efforts was to rebut criticisms of "the Vicini family" by various governmental and non-governmental organizations. *See* Dkt. No. 1-2 at STATE-D002 (Ex. 1 to Koch Decl.). Moreover, other discovery obtained to date in the litigation has shown that plaintiffs Felipe and Juan Vicini, as owners and controlling officers of various sugar-related businesses, were personally and directly involved in the development and execution of an

elaborate public- and government-relations offensive, dating back to at least 2005, focusing on the very subject that was at the core of *The Price of Sugar*:  the working and living conditions of dispossessed Haitians who harvest sugar cane in the Dominican Republic.

The argument by Brand that Movants have treaded outside the bounds of permissible discovery by seeking information about the activities of "'companies [that plaintiffs] own or control that are involved in the sugar business,'" Opp'n at 11 (quoting Motion at 5), stands in glaring contradistinction to the far-reaching definition of relevance that Brand's clients have articulated before this Court in connection with their efforts to secure the testimony of four State Department employees.  *See In re United States Dept. of State*, No. 08-mc-384 (D.D.C.), Dkt. No. 1-1 at 16 (contending that "Fr. Hartley's communications with third parties . . . are relevant" to plaintiffs' claims of defamation against the producers of *The Price of Sugar*).  If information about communications between one of the principal subjects of *The Price of Sugar* (Father Hartley) and U.S. government officials about plaintiffs' sugar business is properly discoverable – as plaintiffs have argued in trying to enforce their State Department subpoenas – then certainly so too must be information about any communications between such government officials and the agents who represent plaintiffs and their sugar interests, namely Brand and his lobbying colleagues at Patton Boggs.

Brand's discussion of "corporate veil" piercing and his invocation of the "alter ego" doctrine are entirely beside the point.  As defendants in a civil action, Movants are entitled to take discovery from non-parties as well as parties.  Establishing direct financial ties between the non-party and an adversary party is not a requirement for a subpoena under Rule 45.  Brand's further suggestion that Movants agree that "this issue . . . already has been briefed and is under consideration" by the trial court is misleading.  The point made in Movants' brief was a different one:  that is, that discovery motions are not the place to make premature arguments about *merits*

*issues* that will eventually be resolved by the trial court.  *See* Opp'n at 12 (quoting Motion at 15 n.11).  Even accepting *arguendo* that the trial court may ultimately decide that information about the lobbying activities of Vicini-owned companies lacks probative value in determining the public-figure status of the Vicinis in this action, that remote possibility is not a basis to deny *discovery* of facts which reasonably bear on that issue, particularly given the existence here of evidence suggesting a close connection between the plaintiffs and their companies' lobbying activities.

### (4)    Brand's association with plaintiffs' trial counsel in the underlying action does not preclude defendants from deposing him about nonprivileged lobbying activities.

In responding to the Motion, Brand continues to rely on his supposed status as "opposing counsel" in the underlying litigation, Opp'n at 14, a claim that is belied by the fact that he has not "appeared at any court hearings," *id*., sought admission to practice in connection with either the action itself or any of the many ancillary proceedings it has spawned, attended any attorney conferences, or even been listed in the signature block on a pleading.[9]  In addition to his lobbying efforts, Brand's work for plaintiffs, according to a declaration from his counsel, has been limited to behind-the-scenes work:  "participating in the development and implementation of litigation planning and strategy."  Chew Decl. ¶ 6.

Movants, of course, are not in a position to dispute that vague factual assertion by Mr. Chew on behalf of his client.  But, even assuming that such activities are equivalent to "*directly* representing the party in the pending litigation," *United States v. Philip Morris Inc.*, 209 F.R.D. 13, 18 (D.D.C. 2002) (emphasis added), Brand fails to address the second prerequisite for application of the criteria identified in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th

---

[9] By contrast, *at least ten* of his colleagues at Patton Boggs have appeared as counsel in various ways in connection with the litigation.

Cir. 1986).  As Judge Kessler said in *Philip Morris*, the *Shelton* factors apply "*only* if the deposition would reveal litigation strategy in the pending case."  *See* 209 F.R.D. at 18 (emphasis in original); *see also id.* ("[D]istrict courts in this Circuit . . . have never embraced [the] view that the *Shelton* criteria apply to all attorney depositions, without regard to the subject matter of the deposition or the deponent's role in the pending case.").  There is simply no reason to conclude that the deposition Movants have proposed – which would be narrowly focused on nonprivileged communications between Patton Boggs LLP and employees, officials, or agents of the executive and legislative branches of the U.S. government regarding the plaintiffs or their sugar businesses – would reveal anything about plaintiffs' litigation strategy in the underlying case, even assuming Brand has some knowledge of that strategy.  Accordingly, the *Shelton* factors are entirely inapposite.

Nor does Brand offer any distinction that would justify this Court reaching a different conclusion here than its brethren have when faced with similar situations.  *See* Motion at 9 (citing four cases in which courts in the D.C. Circuit have allowed depositions of party attorneys to go forward, including in circumstances where, unlike here, the counsel-deponent was expected to play a role at trial).

Moreover, were the Court to consider the *Shelton* factors in assessing the enforceability of the Brand subpoena, that standard would be easily satisfied here.  Contrary to Brand's contentions, there is simply no practical means to obtain the information sought other than by deposing Brand or one of his Patton Boggs colleagues, as only they know which government officials they have met or otherwise communicated with.[10]  In any event, the notion that it is

---

[10] Brand suggests that Movants know the identities of U.S. government officials "who have communicated *with Defendants and Fr. Hartley* directly about [the film] and/or the Vicinis."  Opp'n at 15 (emphasis added).  That is doubtless true, but the relevant information that

better to burden dozens of government officials with subpoenas for documents and testimony rather than to simply take limited discovery from plaintiffs' agent is ridiculous.

Similarly, with respect to the second and third *Shelton* factors, the information is both relevant and crucial to a contested issue in the litigation: the Vicinis' status as public figures. Brand reluctantly concedes that "lobbying services conducted for the Vicinis might be pertinent to the partial defense of whether Plaintiffs were limited purpose public figures," Opp'n at 11, and indeed it is. *See, e.g.*, *Bongiovi v. Sullivan*, 138 P.3d 433, 446 (Nev. 2006) (limited-purpose public figure status may turn on such behavior as "hiring a private lobbyist and public relations agent"). In particular, the existence of a lobbying campaign by the Vicinis in the halls of the U.S. Congress, State Department, and Department of Labor is *prima facie* evidence of a public controversy, which is one of the key elements of the public figure analysis.[11]  Although Brand attempts to persuade the Court that Movants' subpoena is part of an improper "bootstrapping" defense, based solely on plaintiffs' efforts "*to respond* to the defamation," Opp'n at 17, in fact, the very "white paper" that he authored and provided to the State Department makes clear that the Vicinis' lobbying activities were in no way responding to *The Price of Sugar* (which is not referenced anywhere in the document) but instead were directed toward a raft of international criticism of the Vicinis' labor practices dating back to 2005. *See* Dkt. No. 1-2 at STATE-D001-12 (Ex. 1 to Koch Decl.). Furthermore, regardless of whether Patton Boggs was hired by the Vicinis before or after the first public screening of *The Price of Sugar*, the Vicinis' ability to obtain an audience with government officials is probative of their access to the channels of

---

Movants seek is not about their own communications with government officials or those of Father Hartley – it is *the Vicinis'* communications with such persons.

[11] The Vicinis have not identified – and Movants are not independently aware of – any lobbyists retained by the Vicinis other than those at Patton Boggs. Accordingly, securing testimony and documents relating to the specific lobbying activities of Brand and his colleagues is crucial to Movants' public-figure defense.

effective communication – another important consideration in the public figure analysis.

Brand's documents and testimony are therefore directly relevant and of central importance to

Movants' defense against the Vicinis' defamation claims.

## CONCLUSION

Accordingly, and for the reasons stated in Movants' opening Memorandum of Points and

Authorities, Movants respectfully request that the Court compel Brand's immediate and full

compliance with the subpoena by requiring him to provide responsive documents and appear for

deposition, award Movants their attorneys' fees and costs incurred in connection with this

motion, and/or provide such other relief as the Court deems appropriate.

Dated:  August 29, 2008                    Respectfully submitted,

                                           LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.


                                           By:  /s/ John B. O'Keefe
                                                Elizabeth C. Koch
                                                Thomas Curley
                                                John B. O'Keefe, D.C. Bar No. 974892
                                                1050 Seventeenth Street, N.W., Suite 800
                                                Washington, DC  20036
                                                Telephone:  (202) 508-1100
                                                Email:  jokeefe@lskslaw.com

                                                *Counsel for Movants/Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE SUBPOENA *DUCES TECUM* TO JOSEPH L. BRAND** | **MISC. CASE NO. 08-517 (RJL)** |

| | |
|---|---|
| **FELIPE VICINI LLUBERES and JUAN VICINI LLUBERES,**<br><br>                **Plaintiffs,**<br><br>    **vs.**<br><br>**UNCOMMON PRODUCTIONS, LLC and WILLIAM M. HANEY III,**<br><br>                **Defendants.** | **CIVIL ACTION NO. 07-11623 (D. Mass.)** |

**<u>SECOND DECLARATION OF ELIZABETH C. KOCH</u>**

Elizabeth C. Koch, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am member of the law firm Levine Sullivan Koch & Schulz, L.L.P., counsel for

Uncommon Productions, LLC and William M. Haney, III ("Movants").  I submit this declaration

in support of the Motion to Compel Compliance with Subpoena *Duces Tecum* and Request for

Order to Show Cause Why Non-Party Joseph L. Brand Should Not Be Held in Contempt and in

opposition to respondent Joseph L. Brand's Cross-Motion to Quash Subpoena.

2.      On August 17, 2008, Mr. Brand's counsel offered to make Mr. Brand available

for a deposition in connection with the civil litigation captioned as *Lluberes, et al. v. Uncommon

Prods., LLC, et al.*, No. 1:07-cv-11623 (D. Mass.) ("the Litigation") pursuant to a proposed

Consent Order.

3.      On August 18, 2008, I informed Mr. Brand's counsel that, subject to certain

minor modifications, Movants were amenable to signing the proposed Consent Order.  The

proposed Consent Order provided, *inter alia*, that Movants would "not seek, move or attempt to disqualify Patton Boggs LLP or any attorney of Patton Boggs LLP from serving as trial counsel [for plaintiffs] in the underlying action pending in the United States District Court for the District of Massachusetts based on Respondent's compliance with the Subpoena," and that Movants were "not aware of any facts or circumstances that would require Patton Boggs LLP or its attorneys to withdraw from representing [plaintiffs] in the underlying action pursuant to any applicable Rules of Professional Conduct." The Consent Order further provided that the subject matter of Mr. Brand's deposition would be limited to "the 'lobbying services' that Patton Boggs LLP may have provided to [plaintiffs] and/or any business entities in the sugar industry affiliated with [plaintiffs]" (with "lobbying services" defined as nonprivileged communications between Patton Boggs LLP and employees, officials, or agents of the executive and legislative branches of the U.S. government). Attached hereto as Exhibit A is a true and correct copy of the Consent Order as modified by Movants and transmitted to counsel for Mr. Brand.

4.    On behalf of Movants, I further agreed on August 18, 2008, that any deposition of Mr. Brand would be conducted at the Washington, D.C., offices of Mr. Brand's firm, Patton Boggs LLP.

5.    Attached hereto as Exhibit B is a true and correct copy of a transmittal letter that I caused to be deposited with the United States Postal Service (along with a copy set of materials that Movants had obtained from the United States Department of State) on July 25, 2008, for delivery via first-class mail to Benjamin G. Chew at the law offices of Patton Boggs LLP, located at 2550 M Street, N.W., in Washington, D.C.

6.      Attached hereto as Exhibit C is a true and correct copy of a letter that I caused to be hand-delivered via courier service (along with two CD-ROM discs) on July 28, 2008, to Mr. Chew at the law offices of Patton Boggs LLP.

7.      Attached hereto as Exhibit D is a true and correct copy of a letter I received from Mr. Chew on July 31, 2008, responding to the letter hand-delivered on July 28, 2008.

8.      Attached hereto as Exhibit E is a true and correct copy of email correspondence between me and Mr. Chew from the evening of July 28, 2008, in which Mr. Chew informed me that he received his copy of the subpoena to Mr. Brand that afternoon when he "returned from a meeting . . . [and] saw it in my inbox."

I declare under penalty of perjury that the foregoing is true and correct.


Executed on August 29, 2008.

                                            /s/ Elizabeth C. Koch
                                            Elizabeth C. Koch

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNCOMMON PRODUCTIONS, LLC
and  WILLIAM M. HANEY, III,**

**Movants,**

**v.**

**JOSEPH L. BRAND,**

**Respondent.**

**MISC. CASE NO. 1:08-mc-00517 (RJL)**

## CONSENT ORDER

Upon consideration of the agreement of the Movants, Uncommon Productions, LLC and

William M. Haney, III ("Movants," who are Defendants in the underlying action), Respondent

Joseph L. Brand, Esq. ("Respondent"), and Felipe and Juan Vicini Lluberes (the "Vicinis," Plaintiffs

in the underlying action), as evidenced by the endorsement of their counsel hereinbelow, it is, this

_____ day of August, 2008, hereby ORDERED as follows:

1.      Movants' Motion to Compel Compliance with Subpoena *Duces Tecum* and Request

for Order to Show Cause ("Motion") is hereby WITHDRAWN as moot.

2.      On or before Monday, August 25, 2008, Respondent shall produce to Movants all

documents responsive to the Subpoena *Duces Tecum* served upon Respondent on July 28, 2008 (the

"Subpoena").

3.      Respondent shall make himself available for deposition at the offices of Patton

Boggs LLP in Washington, D.C. at a time and date convenient to Respondent and Movants between

Thursday, August 27 and Friday, September 5, 2008.

4.      Movants shall not seek, move or attempt to disqualify Patton Boggs LLP or any

attorney of Patton Boggs LLP from serving as trial counsel to the "Vicinis" in the underlying action pending in the United States District Court for the District of Massachusetts based on Respondent's compliance with the Subpoena.  Movants further acknowledge that as of August 18, 2008,  they are not aware of any facts or circumstances that would require Patton Boggs LLP or its attorneys to withdraw from representing the Vicinis in the underlying action pursuant to any applicable Rules of Professional Conduct.

5.      Movants hereby acknowledge, and shall not assert in the underlying action, that either this Consent Order or Respondent's agreement to appear for his deposition in any way constitutes an admission by Respondent, the Vicinis or Patton Boggs LLP that the Vicinis retained Patton Boggs LLP to perform public policy or lobbying services on their behalf.

6.      Movants' deposition of Respondent shall be confined to the "lobbying services" that Patton Boggs LLP may have provided to the Vicinis and/or any business entities in the sugar industry affiliated with the Vicinis, with "lobbying services" defined as non-privileged communications between Respondent and any employees, officials, or agents of the United States Government (except for the Judiciary).

7.      Movants shall not seek information from Respondent that is subject to the attorney-client privilege, attorney work-product doctrine, or any other applicable privileges.  Movants further acknowledge that Respondent's deposition does not constitute any waiver by Respondent, Patton Boggs LLP or the Vicinis of any applicable privilege in connection with this or any other legal proceeding including, but not limited to, the underlying action, and Movants shall not assert any such waiver.

8.      Movants shall not use this Consent Order in the underlying action or any other legal proceeding as evidence of any fact or admission by Respondent, Patton Boggs LLP or the Vicinis, except for the purpose of enforcing this agreement.

9.      Respondent agrees to reimburse Movants for the costs, including attorneys' fees, incurred in connection with the Motion and this Consent Order.

It is SO ORDERED this _____ day of August, 2008.

_____
RICHARD J. LEON
UNITED STATES DISTRICT JUDGE

SEEN AND AGREED:

____/s/ Elizabeth C. Koch_____
Elizabeth C. Koch (D.C. Bar #412828)
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
1050 Seventeenth St., N.W.
Suite 800
Washington, D.C.  20036
Telephone: (202) 508-1100
Facsimile: (202) 861-9888
Email: ekoch@lskslaw.com

*Counsel for Movants Uncommon Productions, LLC and William M. Haney, III*

_____/s/ Benjamin G. Chew_____
Read K. McCaffrey
Stephen Diaz Gavin
Benjamin G. Chew) (D.C. Bar #418577)
PATTON BOGGS LLP
2550 M St, N.W.
Washington, DC 20037
Telephone:  (202) 457-6015
Facsimile:  (202) 457-6315
Email:  bchew@pattonboggs.com

*Counsel for Respondent Joseph L. Brand*

_____/s/ Benjamin G. Chew_____
Read K. McCaffrey

Stephen Diaz Gavin
Benjamin G. Chew (D.C. Bar # 418577)
PATTON BOGGS LLP
2550 M St, N.W.
Washington, DC 20037
Telephone:  (202) 457-6015
Facsimile:  (202) 457-6315
Email:  bchew@pattonboggs.com

*Counsel for Felipe and Juan Vicini Lluberes, Plaintiffs in
the Underlying Action*

# Exhibit B

# LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

WASHINGTON, D.C.        NEW YORK        PHILADELPHIA        DENVER

1050 SEVENTEENTH STREET, N.W.
SUITE 800
WASHINGTON, D.C. 20036
(202) 508-1100 PHONE
(202) 861-9888 FAX
www.lskslaw.com

WRITER'S DIRECT DIAL
202-508-1128
EKoch@lskslaw.com

July 25, 2008

Benjamin Chew, Esq.
Patton Boggs LLP
2550 M Street, N.W.
Washington, DC 20037

Re:  *Felipe Vicini Lluberes, et al. v. Uncommon Productions, LLC, et. al.,*
    **Case No. 07 CA 11623 (DPW) (D. Mass.)**

Dear Ben:

Please find enclosed documents produced by the U.S. State Department bearing Bates numbers STATE-D001 – STATE-D033 in connection with the above-referenced matter.

Sincerely,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

By _____
    Elizabeth C. Koch

Enclosures

# Exhibit C

# LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

WASHINGTON, D.C.        NEW YORK        PHILADELPHIA        DENVER

1050 SEVENTEENTH STREET, N.W.
SUITE 800
WASHINGTON, D.C. 20036
(202) 508-1100 PHONE
(202) 861-9888 FAX
www.lskslaw.com

WRITER'S DIRECT DIAL
202-508-1128
EKoch@lskslaw.com

July 28, 2008

## HAND-DELIVERY

Benjamin Chew, Esq.
Patton Boggs LLP
2550 M Street, N.W.
Washington, DC  20037

> Re:  *Felipe Vicini Lluberes, et al. v. Uncommon Productions, LLC, et. al.,*
>      **Case No. 07 CA 11623 (DPW) (D. Mass.)**

Dear Ben:

As you will recall, during Eric Grunebaum's deposition on July 23, I discovered that defendants had inadvertently produced a document – UP18488 (designated as Plaintiffs' Exhibit 15) – containing some material subject to the attorney-client privilege.  We agreed at the deposition that defendants would review the document to determine the extent of their inadvertent production of privileged materials and advise plaintiffs accordingly.

Defendants have now confirmed that UP18488 indeed contains material that should have been redacted on privilege grounds.  In addition, defendants have identified five other documents (all versions of the same document as UP18488) that were likewise inadvertently produced with privileged material unredacted.  Because each of these documents is an email attachment, the privileged material was produced twice for each document:  once in the document itself and once embedded in the native email file to which it was attached.  The twelve documents at issue are:

### From Defendants' Native Production 01 (June 2, 2008)
- UP18480-CONFIDENTIAL.eml
- UP18488-CONFIDENTIAL.doc
- UP19035-CONFIDENTIAL.eml
- UP19038-CONFIDENTIAL.doc
- UP19293-CONFIDENTIAL.eml
- UP19295-CONFIDENTIAL.doc
- UP19308-CONFIDENTIAL.eml
- UP19310-CONFIDENTIAL.doc
- UP19346-CONFIDENTIAL.eml
- UP19351-CONFIDENTIAL.doc

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

Benjamin Chew, Esq.
July 28, 2008
Page 2

### From Defendants' Native Production 05 (July 3, 2008)
- UP31878-CONFIDENTIAL.eml
- UP31879-CONFIDENTIAL.doc

Accordingly, and pursuant to Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure, defendants enclose herewith two discs that will replace those inadvertently produced to you with privileged contents on June 2 and July 3. For each of the above-referenced documents, the enclosed replacement discs contain a substitute version of the document with appropriate redactions. Also enclosed is an updated privilege log, which reflects these redactions.

Please return to defendants the two original discs produced to plaintiffs on June 2 and July 3, and destroy any electronic or paper copies plaintiffs have made of the above-referenced documents. I also ask that you instruct the court reporter from Mr. Grunebaum's deposition to destroy the version of Exhibit 15 (UP18488) and replace it with the relevant pages of UP18488-CONFIDENTIAL-REDACTED.pdf, enclosed herewith.

On a related note, I want to call your attention to an error by plaintiffs in making use at deposition of documents produced by defendants in native format. As you may know, native productions do not permit traditional bates labeling on every page of a document; each document gets only one bates number -- which is reflected in the file name – whether the document is one page or 500 pages. By way of example, the entire document that was identified by plaintiffs as Exhibit 15 corresponds to bates number UP18488. It appears that plaintiffs added additional bates-labeling to the remainder of the pages of Exhibit 15, from UP18489 through UP18649. This conduct by plaintiffs' counsel raises two separate but related concerns: first, it is entirely improper for plaintiffs' counsel to be adding "UP" bates numbers to *any* documents in a manner that makes it appear that they the documents have been labeled by defense counsel. In addition, the particular "UP" bates numbers that plaintiffs' counsel has added in fact have been used on other documents. Thus, in the case of UP18489 through UP18649, for example, there are now two different documents with each of these bates number: the one produced by defendants and another created by plaintiffs. In my experience, the best way to reference specific pages of a document produced in native format is to include the page number after a hyphen at the end of the bates number (*e.g.*, UP18488-1, UP18488-2, *etc.*).

Sincerely,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

By _____
/Elizabeth C. Koch

Enclosures

# Exhibit D


**PATTON BOGGS** LLP
ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

July 31, 2008

Benjamin G. Chew
202-457-6015
bchew@pattonboggs.com

## VIA E-MAIL AND FIRST CLASS MAIL

Elizabeth C. Koch, Esq.
LEVINE SULLIVAN KOCH & SCHULZ, LLP
1050 17th Street, N.W., Suite 800
Washington, D.C. 20036

Re:    **Defendants' Production of Redacted Material**
       *Lluberes v. Uncommon Productions,* Case. No. 07-11632 (DPW)

Dear Betsy:

I write in response to your July 28, 3008, letter in which you identify 12 documents that you claim contain privileged material. Upon reviewing the redacted versions of those documents enclosed with your July 28 letter, we respectfully disagree with your assertions of privilege with the possible exception of Mr. Grunebaum's communications with Tom Camp.

While Mr. Grunebaum's communications with Camp arguably may be subject to the attorney-client privilege, it is patently clear that communications (and notes thereof) with various consultants and insurance brokers (e.g., Fred Leopold, Kent Hamilton and Elizabeth Bardsley) are not. Accordingly, we will return Mr. Grunebaum's communications with Tom Camp, but will retain and are challenging any assertion of privilege as to all other redacted communications pursuant to paragraph 13 of the Protective Order.

To that end, we are formally demanding that you produce all communications with anyone at the Truman Van Dyke Company and Elizabeth Bardsley & Associates, Inc. concerning *The Price of Sugar,* including but not limited to all such documents that now appear on Defendants' privilege log. If you assert that communications with Fred Leopold are subject to any privilege, please immediately provide a copy of any retainer agreement entered into with Mr. Leopold or his firm.

Finally, for all entries on Defendants' most recent privilege log, please immediately provide the information required under Fed. R. Civ. P. 26(b)(5)(A) so that Plaintiffs may assess such privilege claims.

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

Elizabeth C. Koch, Esq.
July 31, 2008
Page 2

Very truly yours,

Benjamin G. Chew

# Exhibit E

**From:**    Elizabeth Koch

**Sent:**    Monday, July 28, 2008 8:42 PM

**To:**    Chew, Benjamin

**Subject:** Re: Motion for Leave

Dear Ben,

As required by the Rules, a copy of the subpoena was hand-delivered to Patton Boggs' offices on Friday afternoon. I cannot, of course, speak to when you found it in your inbox.

The service of the subpoena on Mr. Brand was in no manner a "stunt." As you know, from early in the litigation, we have sought to learn details about lobbying services provided to the Vicinis. Late last week, we received from the State Department documents that reflect lobbying efforts by Mr. Brand on behalf of the Vicinis. I carefully tailored the subpoena to Mr. Brand and, as a courtesy, made efforts to alert him about it. I have no intention of inquiring about privileged matters or matters related to the litigation, but his testimony regarding lobbying efforts on behalf of the Vicinis is directly related to the issue of the plaintiffs' public figure status. Finally, as I noted in my cover letter to Mr. Brand, I am willing, as much as possible, to accomodate his availability in scheduling the deposition.

Sincerely,

Betsy Koch
Levine Sullivan Koch & Schulz, LLP

---

**From:** Chew, Benjamin [mailto:bchew@PattonBoggs.com]
**Sent:** Monday, July 28, 2008 6:53 PM
**To:** Elizabeth Koch
**Subject:** RE: Motion for Leave

Dear Betsy,

With respect, we do not consent.

Very truly yours,

Ben

P.S. On an unrelated matter, your stunt today with Mr. Brand was beneath you. Contrary to the statement you made in your correspondence to Read McCaffrey today, I did **not** receive a copy of the subpoena until I returned from a meeting late this afternoon (when I saw it in my inbox), *after* you had him served, which, as you know, violates the Rules.

---

**From:** Elizabeth Koch [mailto:EKoch@lskslaw.com]
**Sent:** Monday, July 28, 2008 6:42 PM
**To:** Chew, Benjamin
**Cc:** Wilkinson, Nigel
**Subject:** Motion for Leave

Ben,

Defendants intend to seek leave of Court to file a very brief reply clarifying a few points raised by the Motion for Leave to Take Limited Discovery Out of Time. Because the Court is considering the motion on an expedited basis, defendants will file their motion for leave to file the reply this evening. Will plaintiffs consent to the filing of the reply?

Sincerely,

Betsy Koch
Levine Sullivan Koch & Schulz, LLP

DISCLAIMER:
This e-mail message contains confidential, privileged information intended solely for the addressee. Please do not read, copy, or disseminate it unless you are the addressee. If you have received it in error, please call us (collect) at (202) 457-6000 and ask to speak with the message sender. Also, we would appreciate your forwarding the message back to us and deleting it from your system. Thank you.

This e-mail and all other electronic (including voice) communications from the sender's firm are for informational purposes only. No such communication is intended by the sender to constitute either an electronic record or an electronic signature, or to constitute any agreement by the sender to conduct a transaction by electronic means. Any such intention or agreement is hereby expressly disclaimed unless otherwise specifically indicated. To learn more about our firm, please visit our website at http://www.pattonboggs.com.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUBPOENA *DUCES TECUM* TO JOSEPH L. BRAND | MISC. CASE NO. 08-517 (RJL) |
| FELIPE VICINI LLUBERES and JUAN VICINI LLUBERES,<br><br>        Plaintiffs,<br><br>vs.<br><br>UNCOMMON PRODUCTIONS, LLC and WILLIAM M. HANEY III,<br><br>        Defendants. | CIVIL ACTION NO. 07-11623 (D. Mass.) |

## ORDER

Upon consideration of the Motion to Compel Compliance with Subpoena *Duces Tecum* and Request for Order to Show Cause Why Non-Party Joseph L. Brand Should Not Be Held in Contempt ("the Motion to Compel"), the Cross-Motion to Quash Subpoena ("the Motion to Quash"), and the entire record herein, it is hereby

**ORDERED** that the Motion to Compel is **GRANTED**; it is further

**ORDERED** that the Motion to Quash is **DENIED**; it is further

**ORDERED** that Joseph L. Brand ("Respondent") shall, by no later than three business days from the date of this Order, fully produce to Uncommon Productions, LLC and William M. Haney, III ("Movants") all documents responsive to the subpoena *duces tecum* served upon Respondent on July 28, 2008; it is further

**ORDERED** that Respondent shall appear for a deposition, to be held at the offices of Patton Boggs LLP in Washington, D.C., at a time and date convenient to Respondent and

Movants, as soon as practicable, but no later than eight business days from the date of this Order; it is further

**ORDERED** that the deposition of Respondent shall be confined to the "lobbying services" that Patton Boggs LLP may have provided to Felipe and/or Juan Vicini Lluberes and/or any business entities in the sugar industry affiliated with them, and "lobbying services" shall be defined as nonprivileged communications between Respondent or other representatives of Patton Boggs LLP and any employee, official, or agent of the United States government (except for the Judiciary); it is further

**ORDERED** that Movants shall not seek, move or attempt to disqualify Patton Boggs LLP or any attorney of Patton Boggs LLP from serving as trial counsel for Felipe and/or Juan Vicini Lluberes in the underlying action pending in the United States District Court for the District of Massachusetts based solely on Respondent's compliance with this Order; it is further

**ORDERED** that Movants shall not seek information from Respondent that is subject to the attorney-client privilege, attorney work-product doctrine, or any other applicable privileges, and shall not assert any waiver of said privilege(s) based solely on Respondent's compliance with this Order; and it is further

**ORDERED** that Respondent shall reimburse Movants for the reasonable attorneys' fees and costs associated with this motion.

It is **SO ORDERED** this _____ day of _____, 2008.


_____

UNITED STATES DISTRICT JUDGE